Michelle **GRAHAM**, an Infant Under the Age of Eighteen, Who Sues by Her Parents, Guardians and Next Friends, Charles Graham and Tammy Graham, Plaintiff,

v.

**WYETH LABORATORIES, A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, a Pennsylvania Corporation, Defendant.**

No. 85–1481–K.

United States District Court,
D. Kansas.

Feb. 2, 1988.

Andrew Hutton, Wichita, Kan., Ted M. Warshafsky, Milwaukee, Wis., for plaintiff.

Albert J. Knopp, Cleveland, Ohio, Alvin D. Herrington, Wichita, Kan., for defendant.

COURT'S MEMORANDUM AND FINDINGS REGARDING MODIFICATION OF PROTECTIVE ORDER AND ESTABLISHMENT OF WYETH LABORATORIES DTP VACCINE LITIGATION LIBRARY

PATRICK F. KELLY, District Judge.

On October 14, 1987, following a jury trial of two months, a unanimous verdict was returned as follows:

1. Does the Wyeth whole cell DTP vaccine cause or substantially contribute to the cause of encephalopathy in children?

Yes _____

2. Did the DTP vaccine received by Michelle Graham on March 17, 1980, cause or substantially contribute to the cause of her encephalopathy?

Yes _____

3. In March of 1980, was defendant Wyeth negligent in connection with testing, designing and/or warning in regard to its DTP whole cell vaccine, which was the legal cause of plaintiff's injuries?

Yes _____

4. In March of 1980, was the DTP whole cell vaccine manufactured by Wyeth in a defective condition unreasonably dangerous to persons as a result of its design, which was the legal cause of plaintiff's injuries?

Yes _____

5. In March of 1980, was the DTP whole cell vaccine in a defective condition unreasonably dangerous to persons as a result of inadequate warnings, which was the legal cause of plaintiff's injuries?

Yes _____

6. What is the total amount of damages sustained by the plaintiff as a result of the injuries to Michelle Graham?

$15 million

On January 29, 1988, I overruled defendant's motion for judgment notwithstanding the verdict, or in the alternative for new trial, or in the alternative for remittur. Full findings of fact and conclusions of law were extended from the bench following the hearing, and they are part of the record.

In addition, I took up the plaintiff's motion for modification of a protective order entered by me on October 17, 1985. The thrust of that order was intended to preserve as confidential or trade secrets all documents produced or information disclosed by Wyeth in the course of the discovery process. The use of these documents was intended for the preparation and trial of this action, and no disclosure of any of it was to be made by plaintiff's counsel save that specifically enumerated. Upon termination of this litigation, those documents, or copies thereof, were to be returned to Wyeth's counsel.

Following hearing, I entered the following findings and directives with regard to the protective order:

At the outset, I will note that the record of this case reveals no trade secrets of Wyeth; moreover, this company no longer produces the DTP vaccine. It follows that it is in no jeopardy insofar as competitors are concerned. I note as well that the record does contain much, even within Wyeth's own files, which is adverse to its position here, and its desire to hold this evidence forever secret is understandable. This, however, is not a good reason to retain and preserve the evidence now brought forward in open court. For all purposes, there are no secrets. There is some material, probably irrelevant, such as the purchase contracts or customer data and/or some privileged material which can be identified and returned to Wyeth.

Next, and because counsel for both litigants are under way elsewhere with a host of similar claims, I will relieve trial counsel for both sides of the admonitions contained therein, and both sides are henceforth at liberty to rely upon any information now available to them and which was as a result

of the trial of this case. Simply said, they may use it for any professional purpose they deem necessary.

Next, I extended the following commentary:

Judges and litigants and their attorneys are ever in the quest for truth, and it strikes me that if it was found as to DTP within the confines of the evidence in this case, then henceforth the record here is the place for the quest to begin in any DTP case. Simply said, one need not be required to "reinvent the wheel."

Surely all of the participants in this case must agree that this case "has it all" regarding Wyeth's whole cell vaccine. Given a next case, the thrust of the evidence can only be cumulated. Nothing will be deleted. By cumulation, I mean with the likes of those I mentioned at the time of ruling on defendant's motion for directed verdict, i.e., Fiben, Steinman or Volpe, or perhaps Pittman or Manclark from FDA, or Barriff and Cherry, even Mortimer. Perhaps, in another case away from Wichita, rather than a Dr. Gilmartin, some plaintiff counsel will look elsewhere, perhaps the Mayo or Johns Hopkins, where, as we know, some physicians within those institutions share his view. To be sure, Dr. Gilmartin is not alone with his view. His testimony in this case, however, would be of considerable importance to a host of physicians found across the country as they take care to ponder the reasons for their patients' conditions.

This case includes every principal witness of Wyeth conceivably available and relevant as pertains to the issues in this case. By this, I mean the likes of Bogish, Tint, Bierly, Irwin, Levner, Dietch, Bernstein, or Rubin. Most of these are now retired. Their memories will fade; their availability not that certain.

This case includes the testimony of noted experts for both sides: Dr. Zahalsky, Geier versus Hewlett, Guggenheim and even Bodensteiner. Is there any question but what these persons will revisit the courtroom time and again?

This case includes a mass of exhibits, all forms of inter-office material, tests, findings, comments—a host of treatises, literature, both sides. I commented in the course of this case that both sides have probably bootlegged into evidence more evidence than they formally offered through witnesses. This case includes comprehensive trial exhibits, most of which will be tendered again and again.

I'm ever certain the discovery workup, well-crafted interrogatories, requests for production and/or admissions, together with responses, are of considerable interest. This case includes a host of discovery depositions with additional material of interest included. Again, all of this kind of material ought to be available in the event a similar case is undertaken here or elsewhere. To put this in context, if I were a trial judge undertaking my first Wyeth vaccine case, at the time of my first status conference with the lawyers, and wherein I will hear of the mass of discovery that is to be undertaken, I would say, "go to Wichita, study the Graham case, familiarize yourselves with what both sides know is necessary in your case, and return here with an understanding that the discovery process can and will be refined and shortened."

Now, understanding this view, and as it pertains to the requisites for discovery, particularly in a case of this complexity, and by this I mean the avoidance of unnecessary repetition, unnecessary expense, and in the interest of judicial expediency, I will set aside the protective order of October 17, 1987, subject to the following:

I will put in place here a Wyeth Laboratory DTP Vaccine Litigation Discovery Library, the contents of which will include the key pleadings; all key discovery instruments and their responses, being copies of all documents produced; all discovery depositions, including all experts deposed as well as their written expert opinions or reports; all rulings made by me, including the memorandum order as pertains to defendant's motion for summary judgment together with the litigants' respective briefs; the pretrial order; all trial briefs filed in the matter, including requested instructions; the entire transcript of this proceeding, including all exhibits referred to in

the transcript whether admitted or not, save those found to be privileged; the court's instructions; post-trial motions; and the court's final order which will be filed momentarily.

The accumulation of these documents will, of course, require the cooperation of the litigants and counsel. Indeed, the impoundment and assimilation and indexing of all of it will be some undertaking, and the litigants' and their counsels' cooperation and advice is welcomed.

All of these documents will be retained and stored here in some convenient place, monitored by the Clerk of the Court, and probably through my courtroom deputy, Mr. Marlin Miller.

Henceforth, and as pertains to similar litigation filed here or elsewhere, on application by any attorney engaged and with the authorization of any trial judge—federal or state—wherein a similar case is filed or under way, the attorney's admission to the library is welcomed here.

Additionally, because the trial record of this case probably will be of interest to researchers, academics, institutions, consumer groups, members of the medical profession or associations, private or governmental, legal associations such as the ATLA and/or Defense Research Institute, and even law students, all in the interest of stimulating scientific and/or public discourse or learning regarding whooping cough vaccinations and their ramifications, they are all welcomed here. Each such person or agency is simply requested to first present to this court a letter of introduction and request for admission.

It is my intention that this facility will be extended by way of additional material supplied from time to time by other litigants, lawyers, judges, or associations following the trial of successive cases, and such additions will be welcome. If space constraints become a problem here, this facility can and will be moved to a more convenient place such as the Wichita Bar Association Law Library, The Wichita State University, or Washburn or Kansas University Schools of Law, or elsewhere.

It is intended that the contents of this library will be available for study, research, copying and/or inspection by those admitted, and facilities for this purpose, as well as reasonable rules regarding administration of the same, will be put in place in due course.

Given cooperation and time, I remain convinced this directive puts in place an entirely workable and productive facility, which can and will be of interest to all litigants, both sides, as pertains to this most provocative and complex subject, and hopefully will serve to substantially reduce costs and expenses otherwise expended in the preparation and trial of such a case.

Following the court's announcements and directives, counsel for Wyeth moved the court for a stay pending its appeal from my order overruling their trial motions. This motion is also overruled.

IT IS THEREFORE ORDERED this 2 day of February, 1988, that the protective order is set aside subject to the establishment of a Wyeth Laboratories DTP Vaccine Litigation Library which will contain all previously protected documents save those found to be privileged. IT IS FURTHER ORDERED that trial counsel are now relieved from the constraints of the protective order and may use any information garnered during this trial for professional purposes.

Local counsel for the litigants are invited to chambers on Friday, February 26, 1988, at 3:00 P.M., for the purpose of implementing the discovery library.